**TERRA HOLDING GMBH,**
**et al., Plaintiffs,**

v.

**UNITRANS INTERNATIONAL,**
**INC., Defendant.**

**Case No. 1:14–cv–1788.**

United States District Court,
E.D. Virginia,
Alexandria Division.

Signed Aug. 19, 2015.

C. Matthew Haynes, LeClairRyan PC, Alexandria, VA, for Plaintiffs.

Justin Lydell Sallis, Julia Claire Colarusso, Gray Plant Mooty Mooty & Bennett PA, Washington, DC, for Defendant.

## ORDER

T.S. ELLIS, III, District Judge.

At issue in this international breach of contract litigation is whether the parties should be compelled to arbitrate this dispute. For the reasons that follow, it is appropriate to compel the parties to submit to an arbitrator, first, the question whether the dispute is subject to arbitration pursuant to the parties' agreement and, if so, the parties are required to submit the dispute itself to arbitration. In the event the arbitrator decides the parties' dispute is not subject to arbitration under the parties' agreement, the parties may return here for further proceedings. This matter will be stayed in the interim.

### I.[1]

Plaintiffs, terra Holding GmbH ("Terra Holding") and Terra Handels-und Speditionsgesellschaft mbH ("Terra Spedition"), are German companies with their principal places of business in Germany. Defendant, Unitrans International, Inc. ("Unitrans"), is a Virginia company with its principal place of business in Virginia.

Terra Holding and Unitrans are each a 45% shareholder of UAB GaTe Logistics LT ("Gate"), a Lithuanian company engaged in the business of providing transportation services in, among other places, the Baltic region and Afghanistan. Terra Spedition is a creditor of Gate.

Soon after Gate was established, Terra Holding, Unitrans, and Gate entered into a Shareholders Agreement dated March 29, 2013. Def.'s Ex. 1.A, Shareholders Agreement ("Shareholders Agreement"). The purpose of the Shareholders Agreement was "to agree on the organisation and management of [Gate's] business operations and the rights and obligations of the Parties in relation to each other and [Gate]

with a view to generating and maximising [Gate's] profitability...." Shareholders Agreement, at 2/10. The Shareholders Agreement provided that "[t]he Agreement shall be governed by the laws of the Republic Lithuania." Shareholders Agreement, cl. 8.7.1. Pertinent here, the agreement also provided that:

> All disputes, claims or controversies arising from or in connection with this Agreement as well as disputes as to the validity, interpretation or breach of this Agreement, shall be settled amicably. In case of failure by the Parties to solve any such dispute, claim or controversy by way of negotiations, or if negotiations do not begin, the said disputes, claims or controversies shall be resolved by arbitration in accordance with the Arbitration Rules of the Vilnius Court of Commercial Arbitration [hereafter "Vilnius Court"]. The respective dispute, claim or controversy shall be examined by 3 (three) arbitrators appointed in accordance with the said Arbitration Rules. The venue of arbitration shall be Vilnius. The arbitration proceeding shall be conducted in the Lithuanian language.

Shareholders Agreement, cl. 8.7.2.

Later in 2013, when Gate began to experience financial distress, Unitrans and Terra Holdings entered into two agreements in an effort to turn things around. They did so apparently pursuant to the Shareholders Agreement, where the parties agreed to "organis[e] and manage[ ] ... [Gate's] business operations ... with a view to generating and maximising [Gate's] profitability...." Shareholders Agreement, at 2/10. First, in or around October 2013, Unitrans and Terra Holdings entered into an agreement that Terra Holdings would loan approximately $945,000 to Gate and that, in the event Gate was un-

---

1. Because this is a threshold motion, the facts are taken as alleged in the complaint. *See*

*Eastern Shore Mkts, Inc. v. J.D. Assocs. Ltd.,* 213 F.3d 175, 180 (4th Cir.2000).

able to repay the outstanding loan amount, Unitrans would pay 50% of the outstanding obligation on the loan. The second agreement took the form of a "Shareholders Resolution" dated March 13, 2014, the terms of which required each party to assume 45% of Gate's liabilities in the event that Gate was unable to satisfy those liabilities. In the end, Gate failed to repay its loan and Unitrans did not satisfy its liabilities.

Plaintiffs filed this action on December 30, 2014. A day later, plaintiffs filed suit in the Klaipeda Regional Court in Lithuania ("Lithuanian Court"). *See* Pls. Ex. 1, Schneidt Aff. ¶ 3. The Lithuanian Court ruled that it did not have jurisdiction and dismissed ("returned") the action on January 5, 2015.[2]

In the complaint at bar, plaintiffs allege that Unitrans induced Terra Holdings to enter the first agreement, which required Terra Holdings to loan $945,000 to Gate, and that Unitrans breached the Shareholders Resolution by failing to fulfill its financial obligation after Gate was unable to repay its loan.

On July 7, 2015, defendant moved to dismiss on *forum non conveniens* grounds. In its reply memorandum, defendant amended the motion, with the plaintiffs' consent, to include a motion to compel arbitration pursuant to the Shareholders Agreement. Defendant argues that the Shareholders Agreement's arbitration clause applies to the dispute over the subsequent agreements, which were apparently made pursuant to the Shareholders Agreement, because those agreements fall within the language "arising from or in connection with" that is found in the Shareholders Agreement's arbitration clause.[3] On August 14, 2015, the parties submitted a joint supplemental brief concerning defendant's motion to dismiss, requesting (1) an order compelling arbitration of the dispute before the Vilnius Court to determine whether this dispute is arbitratable pursuant to the Shareholders Agreement and (2) an order staying this proceeding pending the arbitrators' decision.

At issue now are the following questions: (1) whether the arbitrability of the question presented should be resolved by the Court or by the arbitration panel; (2) whether arbitration may be compelled in Lithuania pursuant to the Federal Arbitration Act and the Convention on the Recognition And Enforcement of Foreign Arbitral Awards Act; and (3) assuming arbitration should be compelled, whether this proceeding should be dismissed or stayed pending arbitration.

2. Plaintiffs furnished a certified translation of the Lithuanian Court's ruling with a true copy of the document in the Lithuanian language as issued by the Lithuanian Court. *See* Schneidt Aff. ¶ 4. Defendant did not dispute this translation.

3. Although the Shareholders Agreement calls for the application of Lithuanian law, it is worth noting the arbitration clause language—"arising from or in connection with"—is contract language commonly used in this country that has received substantial judicial attention and elucidation. *See, e.g., Prima Paint Corp. v. Flood & Conklin Mfg. Co.,* 388 U.S. 395, 398, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967) (labelling as "broad" a clause that required arbitration of "[a]ny controversy or claim arising out of or relating to this Agreement"); *Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading Inc.,* 252 F.3d 218, 226 (2d Cir.2001) (finding that the language "arising from" indicated the parties' intention for an arbitration clause broad in scope); *Am. Recovery v. Computerized Thermal Imaging,* 96 F.3d 88, 93 (4th Cir.1996) (holding that "arising out of" language is interpreted broadly and is "capable of an expansive reach"); *J.J. Ryan & Sons, Inc. v. Rhone Poulenc Textile, S.A.,* 863 F.2d 315, 321 (4th Cir.1988) (holding that "in connection with" language is also construed broadly).

## II.

Analysis of the question whether arbitration should be compelled in this case properly begins with resolving the question whether the Court or the arbitrators should decide the issue of arbitrability, *i.e.*, whether the Court or the arbitration panel is the proper entity to decide whether this dispute falls within the Shareholder Agreement's arbitration clause.

■ The arbitrability question is generally " 'an issue for judicial determination.' " *Peabody Holding Co., LLC v. UMW*, 665 F.3d 96, 102 (4th Cir.2012) (quoting *AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986)). In certain circumstances, however, the arbitrability question is for the arbitrator to decide. *See AT & T Techs., Inc.*, 475 U.S. at 649, 106 S.Ct. 1415. This occurs where the agreement "clearly and unmistakably provide[s] that the arbitrator shall determine what disputes the parties agreed to arbitrate." *Id.* Importantly, the "clear and unmistakable" standard is a high bar; the Fourth Circuit has held that an arbitration clause does not satisfy the "clear and unmistakable" standard simply by "committ[ing] all interpretive disputes 'relating to' or 'arising out of' the agreement" to arbitration. *Carson v. Giant Food, Inc.*, 175 F.3d 325, 330 (4th Cir.1999). Although the Fourth Circuit has not yet said so, it appears from well-reasoned opinions in other circuits that the "clear and unmistakable" standard is met when, in addition to the expansive language, an arbitration clause incorporates a specific set of rules that authorize arbitrators to determine arbitrability.[4]

■ In this instance, the "clear and unmistakable" standard is met because, as defendant argues, the arbitration clause both includes expansive language and incorporates a specific set of rules. The Shareholders Agreement provides that "disputes arising from or in connection with" the agreement "shall be resolved by arbitration in accordance with the Arbitration Rules of the Vilnius Court of Commercial Arbitration." Shareholders Agreement, cl. 8.7.2. The Vilnius Court of Commercial Arbitration Rules ("VCCA Rules") provide that "[w]hen starting consideration of the case, the Arbitral Tribunal shall have the power to rule on its competence to resolve the dispute, including the cases where doubts arise in respect to the existence or validity of an arbitration agreement." VCCA Rules, Art. 28. Thus, the "clear and unmistakable" standard is met here because the arbitration clause in the Shareholders Agreement both includes expansive language and incorporates a specific set of rules that commit the resolution of the arbitrability question to the Vilnius Court arbitrators. In other words, the parties have committed

---

4. *See, e.g., Oracle Am. Inc. v. Myriad Grp. A.G.*, 724 F.3d 1069, 1074 (9th Cir.2013) (holding that incorporation of the United Nations Commission on International Trade Law Arbitration Rules and expansive contractual language met the "clear and unmistakable" standard); *Contec Corp. v. Remote Solution, Co., Ltd.*, 398 F.3d 205, 210 (2d Cir.2005) (holding that "incorporation of arbitration rules giving jurisdiction to the arbitrator provides clear and unmistakable evidence of the parties' intent to arbitrate issue of arbitrability"); *Apollo Computer Inc. v. Berg*, 886 F.2d 469, 473 (1st Cir.1989) (holding that incorporation of the Rules of Arbitration of the International Chamber of Commerce and expansive contractual language met the "clear and unmistakable" standard). *See also Innospec Ltd. v. Ethyl Corp.*, No. 3:14–cv–158, 2014 WL 5460413, *3 (E.D.Va. Oct. 27, 2014) (recognizing that, although the Fourth Circuit has not ruled on the issue, a majority of circuit courts have held that the incorporation of specific rules that allow arbitrators to determine arbitrability meets the clear and unmistakable standard).

the arbitrability determination to the arbitration panel.

## III.

Analysis of the motion to compel arbitration next proceeds to the question whether there is authority in this forum to compel arbitration. In this respect, arbitration may be compelled only where a court has authority to do so. The combination of the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1–16, and the Convention on the Recognition And Enforcement of Foreign Arbitral Awards Act ("Convention"), *id.* §§ 201–208, provides this authority.

The FAA mandates the enforcement of valid arbitration agreements. *See id.* § 2. Nor is there any doubt that the FAA and its underlying policy favoring arbitration apply, as here, to foreign commercial contracts. Indeed, the Supreme Court has made clear that the FAA's "federal policy applies with special force in the field of international commerce." *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614, 631, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985). This is so because the United States has acceded to the Convention, which established a basis for orders to compel arbitration when some parties to an arbitration agreement are foreign. *See* 9 U.S.C. § 202.[5] In determining whether to enforce a foreign arbitration clause pursuant to the Convention, the Fourth Circuit has emphasized four jurisdictional requirements:

(1) there is an agreement in writing within the meaning of the Convention;

(2) the agreement provides for arbitration in the territory of a signatory of the Convention; (3) the agreement arises out of a legal relationship, whether contractual or not, which is considered commercial; and (4) a party to the agreement is not an American citizen, or that the commercial relationship has some reasonable relation with one or more foreign states.

*Aggarao v. MOL Ship Mgmt. Co., Ltd.* 675 F.3d 355, 366 (4th Cir.2012). If "these jurisdictional prerequisites [are] satisfied, a district court is obliged to order arbitration 'unless it finds that the [arbitration] agreement is null and void, inoperative or incapable of being performed.'" *Id.* at 366–67 (alteration in original) (quoting Convention, art. II, ¶ 3).

■ Here, because some of the parties—Terra Holding and Terra Spedition—are foreign, any order to arbitrate must be based on the Convention. *See* 9 U.S.C. § 202. *See also In re White Mountain Mining Co., LLC*, 403 F.3d 164 (4th Cir.2005). The four jurisdictional requirements are met. First, the Shareholders Agreement contains a valid written agreement to arbitrate. Second, Lithuania, the territory to which the arbitration clause points, is a signatory to the Convention. Third, the parties are involved in a commercial relationship. Fourth, some of the parties to the arbitration clause are not American citizens—Terra Holdings is a German company and Gate is a Lithuanian company. Thus, arbitration is compelled

5. The goal of the Convention was "to encourage the recognition and enforcement of commercial arbitration agreements in international contracts and to unify the standards by which agreements to arbitrate are observed and arbitral awards are enforced in the signatory countries." *Scherk v. Alberto–Culver Co.*, 417 U.S. 506, 520 n. 15, 94 S.Ct. 2449, 41 L.Ed.2d 270 (1974). The Convention provides that "[t]he court of a Contracting State ... shall, at the request of one of the parties [to an arbitration agreement], refer the parties to arbitration, unless it finds that said agreement is null and void, inoperative, or incapable of being performed." Convention art. II, ¶ 3. *See also In re White Mountain Mining Co., LLC*, 403 F.3d 164, 168 (4th Cir. 2005).

in accordance with the Shareholders Agreement.

## IV.

In summary, it is clear that the broad scope of the arbitration clause in the Shareholders Agreement, coupled with its incorporation of the VCCA Rules, points convincingly to the conclusion that the arbitrability question is committed to the Vilnius Court arbitrators. Therefore, it is appropriate to order the parties to proceed to arbitration on this preliminary issue of arbitrability. It is also appropriate to order the parties to proceed to arbitrate the parties' entire dispute in the event the arbitrators determine that the dispute is subject to the arbitration clause. Once the arbitration is completed, or in the event the arbitrator determines the dispute is not subject to the arbitration clause, the parties may return here for further appropriate proceedings.

## V.

The final question to address is whether this judicial proceeding should be dismissed or stayed pending arbitration. Although the choice between dismissing and staying the case remains unsettled in this circuit, the better course of action is to stay the case.

Both the Supreme Court and the Fourth Circuit have declined to resolve the question whether district courts retain discretion to dismiss an action when all claims have been referred to arbitration. *See Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 87 n. 2, 121 S.Ct. 513, 148 L.Ed.2d 373 (2000) ("The question whether the District Court should have [dismissed rather than stayed the case after all claims were compelled to arbitration] is not before us, and we do not address it."); *Aggarao*, 675 F.3d at 376 n. 18 (4th Cir.2012) ("We need not resolve [the] disagreement."). The circuits that have addressed this question are split. Three circuits have held that a district court may dismiss an action in such circumstances,[6] but five circuits have held that a district must stay the action.[7]

The circuits that require a stay have reached the correct conclusion. The FAA's "text, structure, and underlying policy command this result." *Katz v. Cellco P'ship*, 794 F.3d 341, 345 (2d Cir.2015). The FAA provides that where, as here, an issue is referable to arbitration, the court "shall on application of one of the parties stay the trial of the action." 9 U.S.C. § 3. As the Second Circuit has recognized, the plain language is clear and unambiguous. *Katz*, 794 F.3d at 345 ("It is axiomatic that the mandatory term 'shall' typically 'creates an obligation impervious to judicial discretion.'") (quoting *Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26, 35, 118 S.Ct. 956, 140 L.Ed.2d 62 (1998)). A mandatory stay also comports with the FAA's appellate structure because a stay, unlike a dismissal, is an unappealable interlocutory order consistent with the FAA's denial of the right to an immediate appeal from an interlocutory order that compels arbitration or stays proceedings. *See* 9 U.S.C. § 16(a)(1)(A)-(B). *See also Katz*, 794 F.3d at 346 ("The dismissal of an arbitrable matter that properly should have been stayed effectively converts an otherwise-unappealable

---

6. *See Bercovitch v. Baldwin Sch., Inc.*, 133 F.3d 141 (1st Cir.1998); *Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161 (5th Cir.1992); *Sparling v. Hoffman Constr. Co.*, 864 F.2d 635 (9th Cir.1988).

7. *See Katz v. Cellco P'ship*, 794 F.3d 341 (2d Cir.2015); *Lloyd v. HOVENSA, LLC*, 369 F.3d 263 (3d Cir.2004); *Cont'l Cas. Co. v. Am. Nat'l Ins.*, 417 F.3d 727 (7th Cir.2005); *Adair Bus Sales, Inc. v. Blue Bird Corp.*, 25 F.3d 953 (10th Cir.1994); *Bender v. A.G. Edwards & Sons, Inc.*, 971 F.2d 698 (11th Cir.1992).

interlocutory stay order into an appealable final dismissal order. Affording judges such discretion would empower them to confer appellate rights expressly proscribed by Congress."). Moreover, a mandatory stay "is consistent with the FAA's underlying policy 'to move the parties to an arbitrable dispute out of court and into arbitration as quickly and easily as possible'" because "[a] stay enables parties to proceed to arbitration directly, unencumbered by the uncertainty and expense of additional litigation, and generally precludes judicial interference until there is a final award." *Katz,* 794 F.3d at 346 (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 22, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983)). In sum, the FAA's text, structure, and underlying policy mandate a stay when all claims have been referred to arbitration.

## VI.

Accordingly, for good cause, and for the reasons stated herein,

It is hereby **ORDERED** that defendant's motion is **GRANTED IN PART** and **DEFERRED IN PART,** specifically as follows:

1. The motion is **GRANTED** insofar as the parties are **DIRECTED** to proceed promptly to present the disputes alleged in the complaint at bar to the Vilnius Court to determine whether those disputes are arbitrable. In the event the Vilnius Court determines that those disputes fall within the arbitration clause in the Shareholders Agreement and are subject to arbitration, the parties are further **ORDERED** to arbitrate the matter in the Vilnius Court. In the event the Vilnius Court determines the disputes are not subject to arbitration under the Shareholders Agreement, the parties may return here for further appropriate proceedings.

2. The motion is **DEFERRED** in all other respects. Specifically, the *forum non conveniens* argument was not reached and need not be addressed unless the parties return here for further appropriate proceedings.

It is further **ORDERED** that this matter is **STAYED** pending arbitration in the Vilnius Court and further order of this Court.

The Clerk is directed to place this matter among the inactive matters until further order of this Court and to send a copy of this Order to all counsel of record.