Gaylor, Inc. of N.C. v. Vizor, LLC, 2015 NCBC 98.

STATE OF NORTH CAROLINA

IREDELL COUNTY

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
15 CVS 839

GAYLOR, INC. OF NORTH CAROLINA,

    Plaintiff,

v.

VIZOR, LLC, NC-UNC HOLDINGS
LLC; TRINITAS VENTURES LLC,
TRINITAS NC-UNC LLC, ANDREW
GEORGE WISHART, LOREN P. KING,
CHRISTOPHER KING, MICHAEL
KING, and MERIDIAN UNC
MANAGEMENT LLC,

    Defendants.

ORDER AND OPINION
ON MOTIONS TO STAY LITIGATION
AND COMPEL ARBITRATION

{1}    **THIS MATTER** is before the Court on Plaintiff Gaylor, Inc. of North Carolina's ("Plaintiff") Motion to Stay Litigation and Compel Arbitration ("Plaintiff's Motion"), Defendants NC-UNC Holdings LLC ("NC-UNC") and Meridian UNC Management LLC's ("Meridian") Motion to Stay Entire Case Pending Arbitration (the "NC-UNC/Meridian Motion"), and Defendants Trinitas Ventures LLC ("Trinitas Ventures"), Trinitas NC-UNC LLC ("Trinitas UNC"), Andrew George Wishart, Loren P. King, Christopher King, and Michael King's[1] Motion to Stay Entire Case Pending Arbitration (the "Trinitas/Individual Defendants Motion") in the above-captioned case.[2]

{2}    After considering the Motions, briefs in support of and in opposition to the Motions, the parties' pleadings and supporting documents, and the arguments of counsel at the August 25, 2015 telephonic hearing in this matter, the Court hereby

---

[1] Defendants Andrew George Wishart, Loren P. King, Christopher King, and Michael King are hereafter collectively referred to as the "Individual Defendants." The Individual Defendants and Defendants NC-UNC, Meridian, Trinitas Ventures, and Trinitas UNC are hereafter collectively referred to as the "Non-Signatory Defendants."

[2] Plaintiff's Motion, the NC-UNC Motion, and the Trinitas/Individual Defendants' Motion are hereafter collectively referred to as the "Motions."

**GRANTS in part** and **DENIES in part** Plaintiff's Motion and **GRANTS** the Trinitas/Individual Defendants Motion and the NC-UNC/Meridian Motion.

*Smith Terry, by Steven L. Smith and Don Terry, for Plaintiff Gaylor, Inc. of North Carolina.*

*Williams Mullen, by Gilbert C. Laite, III, for Defendant Vizor, LLC.*

*Nexsen Pruet, LLC, by David A. Senter, Jeffrey M. Reichard, and Brian R. Anderson, for Defendants NC-UNC Holdings LLC and Meridian UNC Management LLC.*

*Jordan Price Wall Gray Jones & Carlton, by Brian S. Edlin, for Defendants Trinitas Ventures LLC, Trinitas NC-UNC LLC, Andrew George Wishart, Loren P. King, Christopher King, and Michael King.*

Bledsoe, Judge.

## I.
## INTRODUCTION

{3}     This case involves a subcontractor's claims against a general contractor and others arising from work performed in the construction of an apartment project in Chapel Hill, North Carolina.  The threshold issues presented by the Motions are whether certain of the subcontractor's claims are subject to the arbitration provision in the contract between the subcontractor and the general contractor and whether litigation of the subcontractor's claims should be stayed pending the outcome of arbitration proceedings.

{4}     The North Carolina appellate courts have made it clear that "an order denying a motion to compel arbitration must include findings of fact as to 'whether the parties had a valid agreement to arbitrate' and, if so, 'whether the specific dispute falls within the substantive scope of that agreement.'"  *Cornelius v. Lipscomb*, 224 N.C. App. 14, 16, 734 S.E.2d 870, 871 (2012) (citations omitted); *see also, e.g., Cold Springs Ventures, LLC v. Gilead Sciences, Inc.*, 2015 NCBC LEXIS 1, at *6 (N.C. Super. Ct. Jan. 6, 2015) (noting that N.C. Gen. Stat. § 1-569.7 and relevant case law require the trial court "to make finding[s of] fact[] in order to determine whether an 'enforceable agreement to arbitrate' exists . . . .").  At the

same time, our courts have held that "an order compelling arbitration does not affect a substantial right" that will be lost absent an immediate appeal. *Haynesworth v. Am. Express Travel Related Servs. Co.*, No. COA12-472, 2013 N.C. App. LEXIS 315, at *5 (N.C. Ct. App. Apr. 12, 2013) (unpublished) (citing *Bullard v. Tall House Bldg. Co.*, 196 N.C. App. 627, 635–36, 676 S.E.2d 96, 102 (2009) ("[A]n order granting a motion to compel arbitration . . . is explicitly recognized not to have a right of appeal within our case law.")).

{5}     Nonetheless, to assist in any subsequent appellate review of this matter, the Court elects to make the following findings of fact and conclusions of law in support of the Court's order for the limited purpose of deciding the Motions. *See, e.g.*, *Creekside Constr. Co. v. Dowler*, 172 N.C. App. 558, 563, 616 S.E.2d 609, 612 (2005) (affirming order compelling arbitration where trial court made findings of fact and conclusions of law). Although most of the alleged facts are not in dispute, "in determining the threshold issue of whether a mandatory arbitration agreement exists, the court necessarily must sit as a finder of fact. Accordingly, for such limited purpose, the court also may consider evidence as to facts that are in dispute." *Capps v. Blondeau*, 2010 NCBC LEXIS 10, at *5 n.6 (N.C. Super. Ct. Apr. 13, 2010) (citing *Slaughter v. Swicegood*, 162 N.C. App. 457, 461, 591 S.E.2d 577, 580 (2004)), *aff'd*, 217 N.C. App. 195, 719 S.E.2d 256 (2011). The Court makes these findings without prejudice to inconsistent findings in any subsequent evidentiary proceeding. The findings are based on the Complaint, the Motions, and documents of record.

I.

FINDINGS OF FACT

A.     Procedural History.

{6}     Plaintiff initiated this action on April 10, 2015, asserting eight claims for relief against some or all of the various Defendants. Specifically, Plaintiff asserts four claims in which Vizor is the lone defendant: breach of contract, quantum meruit, violation of the Prompt Payment Act, and a claim based on Vizor's delay in

scheduling and coordinating work on the Project[3] (collectively, the "Subcontract Claims"). Plaintiff also asserts three claims in which the Non-Signatory Defendants are the only defendants: a claim to enforce Plaintiff's mechanic's lien against the Project; a claim for piercing the corporate veil; and a claim for tortious interference with contract (collectively, the "Non-Arbitrable Claims"). Finally, Plaintiff asserts a claim for unfair and deceptive trade practices under N.C. Gen. Stat. § 75-1.1 against all Defendants (the "UDTP Claim").

{7}     On April 20, 2015, Superior Court Judge Vance Bradford Long entered an ex parte Order of Attachment attaching funds of Defendants Vizor, Trinitas Ventures and NC-UNC. On April 28, 2015, Defendants Vizor and NC-UNC each moved to dissolve the Order of Attachment, and Judge Long held a hearing on Defendants' April 28 motions on April 30, 2015.

{8}     On May 28, 2015, Defendants NC-UNC, Trinitas Ventures, Trinitas UNC, and the Individual Defendants filed a timely notice of designation of this matter to the North Carolina Business Court. The case was designated a mandatory complex business case on June 2, 2015, and the case was assigned to the undersigned on June 3, 2015.

{9}     Plaintiff filed its Motion on June 8, 2015, seeking to submit to arbitration the Subcontract Claims and the UDTP Claim against Vizor and requesting the Court to stay litigation of each of these claims in this Court pending the outcome of the arbitration.

{10}    Defendants NC-UNC and Meridian filed their Motion on June 29, 2015, requesting the Court to stay litigation of the Non-Arbitrable Claims and the UDTP Claim against the Non-Signatory Defendants pending the outcome of the arbitration between Plaintiff and Vizor. Defendants Trinitas Ventures, Trinitas UNC, and the Individual Defendants filed their Motion the same day, seeking to stay litigation of the same claims.

---

[3] As explained in paragraph 16 *infra*, "the Project" is defined as the construction of The Bicycle Apartments at Central Park in Chapel Hill, North Carolina.

{11}    The Court held a telephonic hearing on the Motions on August 25, 2015, at which all parties were represented by counsel.

{12}    On August 28, 2015, Judge Long entered an Order Denying Motion to Dissolve Order of Attachment by which he denied Defendants Vizor's and NC-UNC's April 28, 2015 motions to dissolve the Order of Attachment.[4]  Defendant NC-UNC filed a notice of appeal of Judge Long's August 28, 2015 order on September 23, 2015.  Plaintiff filed a notice of appeal of Judge Long's order on September 28, 2015.

{13}    The Motions are now ripe for resolution.[5]

B.    Factual Background.

{14}    Plaintiff is a North Carolina corporation with its principal place of business in Iredell County, North Carolina.  (Compl. ¶ 1.)

{15}    Defendants Vizor, LLC ("Vizor"), NC-UNC, Meridian, Trinitas Ventures, and Trinitas UNC are all out-of-state entities authorized to conduct business in North Carolina.  (Compl. ¶¶ 2, 3, 6, 15, 37.)  The Individual Defendants are all residents of Indiana.  (Compl. ¶¶ 19, 24, 32, 33, 36.)

{16}    In 2013, NC-UNC contracted with Vizor for Vizor to serve as the general contractor for the construction of The Bicycle Apartments at Central Park in Chapel Hill, North Carolina (the "Project").   Vizor then entered into a Contractor-Subcontractor Agreement with Plaintiff (the "Subcontract"), pursuant to which Plaintiff completed electrical work on the Project.  Pursuant to the Subcontract,

---

[4]  Where, as here, a Notice of Designation requesting designation of a matter as a complex business case has been filed after a motion has been calendared for hearing before the presiding Superior Court Judge of the county in which the action is pending, the policy of the Business Court has been that the judge before whom the matter was calendared may, in his or her discretion, elect to rule on the motion or defer resolution of the motion to the Business Court judge assigned to the case.

[5]  N.C. Gen. Stat. § 1-294 provides that "[w]hen an appeal is perfected as provided by this Article it stays all further proceedings in the court below upon the judgment appealed from, or upon the matter embraced therein; but the court below may proceed upon any other matter included in the action and not affected by the judgment appealed from."  The Court concludes that its ruling on the current Motions does not affect Judge Long's August 28, 2015 order, and, therefore, that the Court has jurisdiction to enter this Order.  The Court held a telephonic status conference on October 2, 2015, at which counsel for all parties agreed with the Court's conclusion.

Vizor agreed to pay Plaintiff $2,319,374.00 for Plaintiff's work. (Pl.'s Mot. to Stay Litigation and Compel Arbitration Ex. A, hereinafter "Subcontract", p.1.)

{17} Defendant Christopher King, an Indiana resident, is Vizor's Vice President of Construction and signed the Subcontract on behalf of Vizor. (Compl. ¶¶ 84, 85.) He acted as the Project supervisor for Vizor and visited the Project site in North Carolina many times. (Compl. ¶ 20.)

{18} This lawsuit arises out of a dispute between Vizor and Plaintiff regarding Plaintiff's performance of work allegedly outside the scope of the Subcontract without obtaining the written change orders required by the Subcontract.

{19} Article 10 of the Subcontract governs "Disputes." Section 10.2 of the Subcontract provides in relevant part:

> All claims, disputes and other matters in question between [Vizor] and [Plaintiff] . . . arising out of, or relating to this Agreement or the breach thereof . . . shall be subject to arbitration. . . . Such arbitration shall be conducted in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association then in effect . . . .

(Subcontract § 10.2.) Section 10.5 of the Subcontract further provides that "the agreement to arbitrate contained herein shall be interpreted and decided upon by the arbitrator or arbitrators appointed in the arbitration." (Subcontract § 10.5.)

II.

CONCLUSIONS OF LAW

{20} As an initial matter, the Court notes that this dispute is governed by both the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, as well as North Carolina's Revised Uniform Arbitration Act ("NCRUAA"), N.C. Gen. Stat. § 1-569.1 *et seq.* The FAA applies to any "contract evidencing a transaction involving commerce . . . ." 9 U.S.C. § 2 (2012). The United States Supreme Court has observed in this context that "the word 'involving' is broad, and is indeed the functional equivalent of 'affecting.'" *Allied-Bruce Terminix Cox. v. Dobson*, 513 U.S. 265, 273–74 (1995). "[T]he word 'involving,' like 'affecting,' signals an intent to exercise Congress' commerce power to the full." *Id.* at 277. Moreover, the words "a contract evidencing a transaction involving commerce" require only that the transaction involve

interstate commerce. *Id.* at 278–81. It is not required, for the FAA to apply, that the parties to the transaction "contemplate" an interstate commerce connection. *Id.* at 281.

{21} Here, Plaintiff, a North Carolina corporation, contracted with Vizor, an out-of-state general contractor, to conduct electrical work on an apartment project in Chapel Hill. Although the mere fact that the parties are from different states does not necessarily compel application of the FAA, *see Maxum Founds., Inc. v. Salus Corp.*, 779 F.2d 974, 978 n.4 (4th Cir. 1985) ("[T]he mere circumstance of diversity of citizenship between [the parties] is not sufficient to command the application of the [FAA]."), the transaction involved interstate commerce in other ways. For example, a substantial payment for the work – over two million dollars – passed from Vizor in Indiana to Plaintiff in North Carolina and involved Vizor personnel traveling from Indiana to North Carolina to visit the Project site on multiple occasions. Such a contract clearly evidences a transaction involving interstate commerce. *See, e.g.*, *Burke Co. Pub. Schs. Bd. of Ed. v. Shaver P'ship*, 303 N.C. 408, 418–19, 279 S.E.2d 816, 822 (1981) (holding that a contract between an in-state owner and out-of-state contractor relating to an in-state construction project evidenced a transaction involving commerce); *Benezra v. Zacks Inv. Research, Inc.*, No. 1:11-CV-596, 2012 U.S. Dist. LEXIS 47769, at *7–8 n.1 (M.D.N.C. Mar. 30, 2012) ("The parties reside in different states, and the transactions . . . were conducted across state lines through interstate commerce.").

{22} Moreover, the Fourth Circuit has indicated that "the FAA does not impose a burden upon the party invoking the FAA to put forth specific evidence proving the interstate nature of the transaction." *Rota-McLarty v. Santander Consumer USA, Inc.*, 700 F.3d 690, 697 (4th Cir. 2012) (holding that the defendant made the requisite initial showing to invoke the FAA, which plaintiff failed to rebut). Here, Vizor made an initial showing to invoke the FAA, and Plaintiff has made no argument nor presented any evidence refuting the interstate nature of this transaction.

{23} Thus, because the contract evidences a transaction involving interstate commerce, the FAA applies. *See Burke*, 303 N.C. at 418–19, 279 S.E.2d at 822 ("The Federal Arbitration Act, by virtue of the Supremacy Clause, is . . . part of North Carolina law."). Nonetheless, "even when the FAA governs a dispute, state law fills procedural gaps in the FAA as it is applied in state courts," *Cold Springs Ventures, LLC v. Gilead Sciences, Inc.*, 2014 NCBC LEXIS 10, at *8 (N.C. Super. Ct. Mar. 26, 2014), including where claims might otherwise be governed by sections 3 and 4 of the FAA, *see Southland Corp v. Keating*, 465 U.S. 1, 16 n.10 (1984) ("[W]e do not hold that §§ 3 and 4 of the [FAA] apply to proceedings in state courts."). Thus, North Carolina law fills those procedural gaps in the FAA here. *See Carter v. TD Ameritrade Holding Corp.*, 218 N.C. App. 222, 226, 721 S.E.2d 256, 260 (2012) (Even though the FAA applied to the dispute, "Defendants' motion to compel arbitration was properly made and considered under [N.C. Gen. Stat. § 1-569.7(a)]."); *see also Blow v. Shaughnessy*, 68 N.C. App. 1, 17, 313 S.E.2d 868, 877 (1984) ("When not in substantive conflict, state law controls questions of procedure. Thus, defendants' motion was properly made and considered under [N.C. Gen. Stat. § 1-569.7(a)].").

A.    Arbitrability

{24} Plaintiff moves to compel arbitration of all of its claims against Vizor, i.e., the Subcontract Claims and the UDTP Claim.[6] Under N.C. Gen. Stat. § 1-569.7(a), when presented with a motion to compel arbitration, the Court "shall proceed to summarily decide" whether there is an enforceable agreement to arbitrate. N.C. Gen. Stat. § 1-569.7(a) (2014). If the Court concludes there is an enforceable agreement to arbitrate, the Court must order the parties to arbitrate claims subject to that agreement. *Id.*

{25} Here, the parties do not dispute that the arbitration provisions of the Subcontract constitute a valid and enforceable arbitration agreement between

---

[6] Plaintiff does not seek to compel arbitration of any of the Non-Arbitrable Claims. The parties agree, and the Court finds, that no enforceable agreement to arbitrate exists between Plaintiff and the Non-Signatory Defendants as to the Non-Arbitrable Claims, and arbitration should not, and will not, be ordered as to these claims. *See* N.C. Gen. Stat. § 1-569.7(c).

Plaintiff and Vizor as to claims arising out of or relating to the Subcontract. Moreover, none of the parties dispute that the Subcontract Claims arise out of or relate to the Subcontract and are, therefore, properly arbitrable. Indeed, the plain language of the Subcontract clearly indicates that Plaintiff and Vizor agreed to arbitrate claims arising out of or relating to the Subcontract. The Court therefore concludes that a valid and enforceable agreement to arbitrate the Subcontract Claims exists, and Plaintiff and Vizor should be ordered to arbitrate these claims.

{26} The parties disagree, however, about whether an enforceable agreement to arbitrate exists between Plaintiff and Vizor as to the UDTP Claim against Vizor. Plaintiff argues that its UDTP Claim against Vizor arises out of or relates to the Subcontract and, therefore, should be submitted to arbitration. Vizor argues in response that the claim is pleaded against all Defendants, including the Non-Signatory Defendants, and, as such, should not be the subject of arbitration between Plaintiff and Vizor. The Non-Signatory Defendants agree with Vizor and further contend that if the UDTP Claim against Vizor is submitted to arbitration, they face a risk that the arbitrator's findings on that claim may be binding against them in this action.

{27} "Arbitrability disputes often necessitate a two-step inquiry. First, [courts] determine who decides whether a particular dispute is arbitrable: the arbitrator or the court. Second, if [the court] concludes that the court is the proper forum in which to adjudicate arbitrability, [the court] then decides *whether* the dispute is, in fact, arbitrable." *Peabody Holdings Co., LLC v. UMW*, 665 F.3d 96, 101 (4th Cir. 2012). As to the first question, Plaintiff argues that, in this case, it is the arbitrator, and not the Court, who must determine whether Plaintiff's claims are subject to the arbitration provisions in the Subcontract. According to Plaintiff, section 10.5 of the Subcontract, which states that "the agreement to arbitrate contained herein shall be interpreted and decided upon by the arbitrator or arbitrators appointed in this arbitration," (Subcontract § 10.5), requires the decision regarding arbitrability to be made by the arbitrator. Vizor contends in opposition that this issue is one for the Court.

{28} The United States Supreme Court has held that "[u]nless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator." *AT&T Techs. v. Communs. Workers of Am.*, 475 U.S. 643, 649 (1986); *see also Peabody*, 665 F.3d at 102 ("Parties, to be sure, can agree to arbitrate arbitrability, but such agreement must . . . clearly and unmistakably provide that the arbitrator shall determine what disputes the parties agreed to arbitrate.") (internal quotation marks and citations omitted) (alteration in original). The "'clear and unmistakable' standard is exacting, and the presence of an expansive arbitration clause, without more, will not suffice." *Peabody*, 665 F.3d at 102. This test "requires more than simply saying that the arbitrator determines the meaning of any disputed contractual terms. The courts have repeatedly rejected the assertion that general arbitration clauses . . . commit to arbitration disputes over an arbitrator's jurisdiction." *Carson v. Giant Food, Inc.*, 175 F.3d 325, 329 (4th Cir. 1999).

{29} Of particular relevance here, the Fourth Circuit has found that "clauses requiring arbitration to resolve disputes 'regarding the terms of this Agreement' [or] concerning the interpretation of the provisions of this Agreement . . . do not clearly and unmistakably commit questions of arbitrability to arbitration." *Id. at* 330; *see also Peabody*, 665 F.3d at 103 (finding that a clause requiring that "[a]ny dispute alleging a breach of this [Agreement]" be submitted to arbitration did not meet the clear and unmistakable standard); *E.I. Dupont De Nemours & Co. v. Martinsville Nylon Employees Council Corp.*, No. 94-2222, 1996 U.S. App. LEXIS 3208, at *6 (4th Cir. Feb. 28, 1996) (unpublished) (holding that a clause which provided for arbitration of "any question as to the interpretation of this Agreement or as to any alleged violation of any provision of this Agreement" did not meet the clear and unmistakable standard). As a result, although the language in section 10.5 of the Subcontract that "the agreement to arbitrate . . . shall be interpreted and decided upon by the arbitrator" might seem to submit interpretative disputes to the arbitrator, the chosen language does not appear to satisfy the "clear and unmistakable" standard as applied by the Fourth Circuit.

{30}    The Court's required analysis, however, is not concluded with this assessment. The Subcontract also adopts the Construction Industry Arbitration Rules of the American Arbitration Association ("AAA"), (*see* Subcontract § 10.2), one of which – Rule 9(a) – provides that "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement." AAA, Construction Industry Arbitration Rules and Mediation Procedures, Rule 9(a) (July 1, 2015) (hereinafter, "AAA Construction Industry Rules").

{31}    A federal district court in Virginia has recently observed that

> [a]lthough the Fourth Circuit has not yet addressed whether an incorporation of the AAA Commercial Rules satisfies the "clear and unmistakable" test, the seven circuits that have explicitly addressed this question have held "that the express adoption of these rules presents clear and unmistakable evidence that the parties agreed to arbitrate arbitrability."

*United States ex rel. Beauchamp & Shephard v. Academi Training Ctr.*, No. 1:11cv371, 2013 U.S. Dist. LEXIS 46433, at *15–16 (E.D. Va. Mar. 29, 2013) (listing cases). Significantly, the Virginia federal court held in that case that Rule 7 of the AAA Commercial Rules – which is identical to Rule 9 of the AAA Construction Industry Rules at issue here – "'clearly and unmistakably' delegates to the arbitrator the question of arbitrability and thus, the [arbitration agreement], by referencing the AAA Commercial Rules, 'clearly and unmistakably' does the same." *Id.* at *15; *see also Terra Holding GmbH v. Unitrans Int'l, Inc.*, No. 1:14-cv-1788, 2015 U.S. Dist. LEXIS 112570, at *7–8 (E.D. Va. Aug. 19, 2015) ("Although the Fourth Circuit has not yet said so, it appears from well-reasoned opinions in other circuits that the 'clear and unmistakable' standard is met when, in addition to the expansive language, an arbitration clause incorporates a specific set of rules that authorize arbitrators to determine arbitrability.").

{32}    The Court finds persuasive the Virginia federal district court's reasoning in *Beauchamp & Shephard* and in the federal circuit court opinions upon which it relies and similarly concludes that the Subcontract's adoption of the AAA

Construction Industry Rules – and in particular Rule 9(a) – "clearly and unmistakably" submits the issue of the arbitrability of the UDTP Claim to the arbitrator. Accordingly, the Court concludes that the arbitrability of Plaintiff's UDTP Claim against Vizor – in particular, whether the UDTP Claim arises out of or relates to the Subcontract and thus whether Plaintiff and Vizor agreed to arbitrate that claim – must be submitted to the arbitrator for determination.

B.  Stay of Litigation

{33}  The Court next determines whether and to what extent this litigation should be stayed pending the outcome of the arbitration proceedings between Plaintiff and Vizor.

{34}  As an initial matter, the parties agree that litigation of the Subcontract Claims should be stayed pending the outcome of arbitration. The Court therefore concludes that litigation of the Subcontract Claims should be stayed pending the outcome of arbitration proceedings between Plaintiff and Vizor.[7] *See* N.C. Gen. Stat. § 1-569.7(g) ("If the court orders arbitration, the court on just terms shall stay any judicial proceeding that involves a claim subject to the arbitration.").

{35}  The parties disagree, however, concerning whether litigation of the Non-Arbitrable Claims should be stayed and to what extent the UDTP Claim should be stayed pending the outcome of the arbitration between Plaintiff and Vizor. As to the Non-Arbitrable Claims, Plaintiff argues that litigation of these claims should continue in this Court while the arbitration proceeds between Plaintiff and Vizor. The Non-Signatory Defendants contend, however, that the Non-Arbitrable Claims are derivative of the Subcontract Claims, which are subject to arbitration between Plaintiff and Vizor, and that litigation of those claims should therefore be stayed pending the outcome of the arbitration. In particular, the Non-Signatory Defendants argue that Plaintiff's maintenance of the Non-Arbitrable Claims is dependent on a finding that Vizor breached its contract with Plaintiff. Should the

---

[7] Because the Court has concluded that the arbitrability of the UDTP claim against Vizor must be submitted to arbitration, the Court also concludes that litigation of the UDTP claim against Vizor must be stayed at least pending the arbitrator's determination of this issue. *See* N.C. Gen. Stat. § 1-569.7(g).

arbitrator conclude that Vizor is not liable for breach, then, according to the Non-Signatory Defendants, Plaintiff would be unable to maintain any of the Non-Arbitrable Claims.

{36} As to the UDTP Claim, Plaintiff contends that, regardless of the arbitrator's determination concerning the arbitrability of that claim, litigation of the UDTP Claim against the Non-Signatory Defendants should continue in this Court while arbitration proceeds between Plaintiff and Vizor. Plaintiff further contends that should the arbitrator conclude that the UDTP Claim against Vizor is not arbitrable, that claim should be litigated in this Court and not stayed pending the outcome of the arbitration on Plaintiff's arbitrable claims. Vizor and the Non-Signatory Defendants disagree on both counts, contending that should the arbitrator determine that the UDTP Claim against Vizor is arbitrable, litigation of that claim against the Non-Signatory Defendants during arbitration would result in piecemeal litigation of that claim and possibly inconsistent results. Should the arbitrator determine that the UDTP Claim against Vizor is not arbitrable, Defendants argue that the claim, like the Non-Arbitrable Claims, is dependent on a finding that Vizor breached its contract with Plaintiff and should therefore nonetheless be stayed pending the outcome of arbitration.

{37} N.C. Gen. Stat. § 1-569.7(g) provides that "[i]f the court orders arbitration, the court on just terms shall stay any judicial proceeding that involves a claim subject to the arbitration." The statute further provides that "[i]f a claim subject to the arbitration is severable, the court may limit the stay to that claim." *Id.* The trial court has broad discretion to grant or deny a request for stay in such circumstances. *See, e.g.*, *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 20 n.23 (1983) (The decision "to stay litigation among the nonarbitrating parties pending the outcome of the arbitration . . . is one left to the district court (or to the state trial court under applicable state procedural rules) as a matter of its discretion to control its docket."); *Sloan Fin. Group, Inc. v. Beckett*, 159 N.C. App. 470, 485, 583 S.E.2d 325, 334 (2003) ("The decision to grant or deny a stay rests within the discretion of the trial court . . . ."); *Apex Tool Grp., LLC v. Ingersoll-Rand*

*Co.*, 2013 NCBC LEXIS 24, at \*14–15 (ordering a stay of nonarbitrable claims where those claims were inherently dependent on the outcome of the arbitrable claims).

{38}    After considering these principles as applied to this case, the Court concludes, in the exercise of its discretion, that the prosecution of Plaintiff's claims against all Defendants should be stayed pending the outcome of the arbitration between Plaintiff and Vizor.

{39}    In particular, as to the Non-Arbitrable Claims, the Court, in the exercise of its discretion, concludes that a stay of litigation in this Court is appropriate because it appears that these claims will be impacted by the outcome of the claims subject to arbitration between Plaintiff and Vizor.    As the Non-Signatory Defendants point out, resolution of each of the arbitrable claims in favor of Vizor may impact Plaintiff's ability to maintain any of the Non-Arbitrable Claims against the Non-Signatory Defendants.    Therefore, the Court concludes that litigation of these claims should be stayed pending the outcome of the arbitration between Plaintiff and Vizor.    *See, e.g.*, *Beiler v. Fifth Third Bank*, 1:13CV867, 2014 U.S. Dist. LEXIS 84126, at \*12–13 (M.D.N.C. Jun. 20, 2014) (staying non-arbitrable claims where an issue that would likely be resolved in arbitration would affect the plaintiff's ability to state a claim for relief for a non-arbitrable claim).

{40}    As to Plaintiff's UDTP Claim, the Court, in the exercise of its discretion, concludes that a stay of litigation of the claim in its entirety is appropriate to avoid piecemeal litigation of that claim.    Should the arbitrator determine that the UDTP Claim against Vizor is arbitrable between Plaintiff and Vizor, a stay would avoid litigation of the claim against the Non-Signatory Defendants while arbitration of the same claim proceeds against Vizor alone.    Similarly, should the arbitrator determine that the UDTP claim as to Vizor is not arbitrable, a stay would allow the claim to be litigated only once, in this Court, against all Defendants, after the arbitration is concluded between Plaintiff and Vizor.

IV.

CONCLUSION

{41} **NOW THEREFORE**, based on the foregoing, it is **ORDERED** that:

A. The Trinitas/Individual Defendants Motion and the NC-UNC/Meridian Motion are hereby **GRANTED**.

B. Plaintiff's Motion is hereby **GRANTED in part** and **DENIED in part** as set forth below.

C. The Subcontract Claims are hereby ordered to arbitration, and litigation of the Subcontract Claims in this civil action is hereby **STAYED** pending the outcome of arbitration proceedings between Plaintiff and Vizor.

D. The litigation of the Non-Arbitrable Claims in this civil action is hereby **STAYED** pending the outcome of arbitration proceedings between Plaintiff and Vizor.

E. The determination of whether Plaintiff's UDTP Claim against Vizor is arbitrable is **DEFERRED** to a properly-selected arbitrator in arbitration, and litigation of the UDTP Claim in this civil action is hereby **STAYED** pending the outcome of arbitration proceedings between Plaintiff and Vizor.

F. The parties shall notify the Court of the arbitrator's decision concerning the arbitrability of Plaintiff's UDTP claim within seven (7) days after such decision has been issued.

G. The parties shall notify the Court of the outcome of the arbitration proceeding within seven (7) days after the arbitrator has issued his or her decision. Plaintiff shall submit to the Court a copy of the arbitrator's decision accompanied by the parties' recommendations concerning further proceedings in this Court.

**SO ORDERED**, this the 30th day of October, 2015.



/s/ Louis A. Bledsoe, III
Louis A. Bledsoe, III
Special Superior Court Judge
for Complex Business Cases