T. S. Ellis, III, United States District Judge
The threshold issue in this diversity breach of contract action is whether this matter should be stayed and referred to arbitration in accordance with the arbitration clause contained in the contract at issue. For the reasons that follow, the defendant's motion to stay this matter and compel arbitration must be granted.
I.
The plaintiff, Brenco Enterprises, Inc. ("Brenco"), is a Virginia corporation that provides catering services. Defendant, Bitesquad.com, LLC ("Bite Squad"), is a Minnesota based food delivery services company that uses its website as a platform to allow customers to order food delivery online.
Brenco sold its catering services business to Bite Squad for $750,000 in the *610 form of a Promissory Note executed by Bite Squad and issued to Brenco. The sale was orchestrated pursuant to an Asset Purchase Agreement (the "Agreement"), which set forth the terms of the sale and the parties' obligations. Under the Agreement, Brenco warranted that:
There are no impending changes in the Seller's Business or in the relationships of Seller with its customers or suppliers ..., which if one or more should occur, could reasonably be expected to have a material adverse effect on the prospects, financial condition or results of operation of the Seller's Business.
Ex. A at § 4.24.
Article 7 of the Agreement allows Bite Squad to seek indemnification from Brenco resulting from breaches of the Agreement and interrelated agreements. Under § 7.1 of the Agreement, Brenco agreed to indemnify Bite Squad for "any and all damages, ... which may be sustained or suffered by [Bite Squad] arising from ... a breach of any ... warranty ...made by [Brenco]." Ex. A, at § 7.1. Further, § 3.5 of the Agreement gives Bites Squad the right "to set off against the Promissory Note, any unpaid obligation of [Brenco] pursuant to Article 7 of this Agreement."
Section 8.15(b) of the Agreement detailed the parties' agreement to arbitrate:
Without prejudice to each party's right to seek injunctive or mandatory relief from a court, the parties agree that all other disputes arising under this Agreement or any of the Ancillary Agreements, or any alleged breach hereof or thereof, shall be submitted to binding arbitration in accordance with the Commercial Arbitration Rules of the American Arbitration Association then in effect....
Id. at § 8.15(b).
The Agreement goes on to define "Agreement" as "this Asset Purchase Agreement and the schedules and exhibits hereto and the other agreements attached hereto or made a part of this Agreement." Id. at Art. 1. Among the "exhibits" attached to the Agreement was the Promissory Note for $750,000, executed on June 30, 2016, contemporaneously with the Asset Purchase Agreement. The Note provided that it was "issued pursuant to that certain Asset Purchase Agreement dated as of the date hereof [ ]." See Compl. Ex. 1 at 1. Section 5 of the Note provides that "[i]n accordance with the terms and provisions of the Purchase Agreement, [Bite Squad] is entitled to set off against any amounts due under this Note, amounts, if any, which [Brenco] may be obligated to pay [Bite Squad] under the Purchase Agreement."Id. § 5.
Shortly after the parties executed the Agreement, several key Brenco personnel defected from the business to establish a competing operation. Bite Squad believed that these defections breached the warranty in the Agreement assuring Bite Squad that there were "no impending changes in [Brenco's] Business ...." Ex. A § 4.24. On January 31, 2017, Bite Squad requested indemnification from Brenco for the alleged breaches of the Agreement, and Bite Squad notified Brenco that it intended to offset its losses from the Note issued to Brenco under the Agreement.
After a year of negotiation, the parties were unable to reach a resolution and Brenco filed its complaint seeking: (i) damages for breach of the Promissory Note, (ii) specific performance on the Promissory Note, (iii) declaratory relief stating that the Agreement's set-off provisions do not allow Bite Squad to set-off from the Promissory Note, and (iv) declaratory relief stating that Bite Squad was not entitled to indemnification without an adjudication.
*611 Bite Squad, seeking to vindicate what it views as its right to arbitrate disputes arising under the Agreement, filed this motion to stay the proceedings and compel arbitration.
II.
This case presents two questions: (i) whether the parties' contractual dispute falls within the scope of the arbitration clause in the agreement, i.e. that is whether the parties' dispute is arbitrable, and (ii) who decides the question of arbitrability, a court or the arbitrator. Analysis properly and logically begins with the second question-whether a court or the arbitrator should determine arbitrability. In general, arbitrability questions are " 'an issue for judicial determination.' " Peabody Holding Co., LLC v. UMW , 665 F.3d 96, 102 (4th Cir. 2012) (quoting AT&T Techs., Inc. v. Commc'ns Workers of Am. , 475 U.S. 643, 649, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986) ). This is so because, as the cases recognize, deciding whether a dispute falls within the scope of an arbitration clause is essentially a question of contract interpretation, which is quintessentially a question decided by a court. Id. Under certain circumstances, however, arbitrability can be a question for the arbitrator to decide. This occurs where an agreement "clearly and unmistakably provide[s] that the arbitrator shall determine what disputes the parties agreed to arbitrate[,]" the arbitrability decision is left to the arbitrator. AT & T Techs., Inc. , 475 U.S. at 649, 106 S.Ct. 1415. Importantly, the Fourth Circuit has noted that the "clear and unmistakable" standard is a high bar,[1] but has not addressed precisely whether incorporation of AAA rules would clear the high bar. Other circuits, however, have done so and those circuits uniformly concluded that the "clear and unmistakable" standard is met when, in addition to the expansive language, an arbitration clause incorporates a specific set of rules, such as the American Arbitration Association Commercial Arbitration Rules, that authorizes arbitrators to determine arbitrability. See, e.g. , Petrofac, Inc. v. DynMcDermott Petroleum Ops. Co. , 687 F.3d 671, 675 (5th Cir. 2012) ("the express adoption of [the AAA Commercial Rules] presents clear and unmistakable evidence that the parties agreed to arbitrate arbitrability.").[2]
In this instance, the "clear and unmistakable" standard is met because, as *612 Bite Squad correctly argues, the arbitration clause includes expansive language and incorporates a specific set of rules requiring that the arbitrator determine arbitrability. Specifically, the Agreement provides that "disputes arising under" the Agreement "or any of the Ancillary Agreements" are subject to arbitration "in accordance with the Commercial Arbitration Rules of the American Arbitration Association[.]" Ex. A. Art. 1 § 8.15(b). The Agreement's "disputes arising under" language demonstrates an intent of the parties to submit all disputes related to the Agreement to arbitration.[3] Additionally, the arbitration clause at issue here also incorporates the Commercial Arbitration Rules of the American Arbitration Association which provide that "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim." AAA Commercial Rule 7(a). Given this "clear and unmistakable" language, there is no doubt that the Agreement's arbitration clause manifests the parties' clear intention to commit the arbitrability determination to the arbitrator.
The plaintiff, seeking to avoid this conclusion, argues unpersuasively that the arbitration clause in the Agreement is even narrower than clauses in other cases where courts have found the "clear and unmistakable" standard was not satisfied. In this respect, plaintiff relies chiefly on the Fourth Circuit's decision in Peabody Holding Co., LLC v. United Mine Workers of America, Intern. Union , 665 F.3d 96, 102 (4th Cir. 2012), which held that language submitting to arbitration "[a]ny dispute alleging a breach" was too narrow to meet the exacting "clear and unmistakable" standard. The arbitration clause in Peabody , however, did not include a provision incorporating the AAA Commercial Rules, which explicitly require submission of arbitrability issues to the arbitrator. The Peabody case is clearly inapposite and is therefore of no help to the plaintiff.
In sum, where, as here, an arbitration clause incorporates the AAA Commercial Rules and includes broad language allowing for arbitration of disputes arising under an agreement, the "clear and unmistakable" standard is met and arbitrability should be determined in the first instance by an arbitrator.
III.
Although the arbitrability question must be addressed in the first instance by the *613 arbitrator and need not be addressed here, it is worth noting that parties' dispute is very likely to be found arbitrable by the arbitrator. This is so because the Agreement and the Promissory Note are essentially two parts of the same contractual agreement between the parties. The Agreement includes the Promissory Note as an exhibit and both the Promissory Note and the Agreement refer to one another: the promissory note provides that "[t]his Note is issued pursuant to that certain Asset Purchase Agreement[,]" and the Agreement is defined as including both the Agreement itself and "the schedules and exhibits thereto." The Promissory Note was attached to the Agreement as Exhibit E, and under those circumstances the Promissory Note is a part of the Agreement. Thus, the Agreement and the Promissory Note are essentially parts of the same contract and therefore any dispute over the Promissory Note arises under the Agreement and is subject to arbitration.[4]
The plaintiff's argument that counts 3 and 4, which seek declaratory relief, fall within the arbitration clause's exception for "injunctive or mandatory relief from a court" is meritless. Ex. A at § 8.15(b). These counts seek a ruling on the interpretation of the contract and are essentially typical breach of contract claims dressed up and disguised as declaratory judgment actions. Artful pleading of claims as declaratory judgment actions should not allow a party to avoid a broad arbitration clause and any reading to the contrary would clearly undermine the intention of the parties to arbitrate disputes arising under the Agreement. See Clarus Medical, LLC v. Myelotec, Inc. , 2005 WL 3272139 at *4 (D. Minn. 2005) ("so long as a claim was disguised as a declaratory judgment action, that claim could be brought before a court and thus circumvent the very broad language of the arbitration clause.").[5] Thus, even if arbitrability were for a court and not the arbitrator to decide, the claims brought by Brenco would nonetheless likely be held to be subject to arbitration.
Accordingly, for the reasons stated above, and for good cause shown,
It is hereby ORDERED that the defendant's motion to stay and compel arbitration is GRANTED (Doc. 5).
It is further ORDERED that this matter is STAYED pending the arbitration of plaintiff's claims pursuant to the parties' arbitration agreement and further Order of this Court.
*614 It is further ORDERED that promptly upon resolution of the arbitration of plaintiff's claims, the parties are DIRECTED to file a pleading notifying the Court that the arbitration proceedings have been resolved.
The Clerk is directed to send a copy of this Order to all counsel of record, and to administratively close the case and place this matter among the inactive causes.

See, e.g. , Carson v. Giant Food, Inc. , 175 F.3d 325, 330 (4th Cir.1999) (holding that an arbitration clause does not satisfy the standard simply by "committ[ing] all interpretive disputes 'relating to' or 'arising out of' the agreement" to arbitration").

See also Fadal Machining Centers, LLC v. Compumachine, Inc. , 461 Fed.Appx 630, 632 (9th Cir. 2011) ("[T]he language of the arbitration clause shows a clear and unmistakable intent to delegate questions of scope to the arbitrator.... The clause incorporates the AAA's Commercial Arbitration Rules, which provide that '[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement.' "); Fallo v. High-Tech Inst. , 559 F.3d 874, 878 (8th Cir. 2009) ("Consequently, we conclude that the arbitration provision's incorporation of the AAA Rules ... constitutes a clear and unmistakable expression of the parties' intent to leave the question of arbitrability to an arbitrator."); Qualcomm Inc. v. Nokia Corp. , 466 F.3d 1366, 1373 (Fed. Cir. 2006) ("We agree with the Second Circuit's analysis in Contec and likewise conclude that the 2001 Agreement, which incorporates the AAA Rules containing the same language as that in Contec, clearly and unmistakably shows the parties' intent to delegate the issue of determining arbitrability to an arbitrator."); Terminix Int'l Co., LP v. Palmer Ranch Ltd. Partnership , 432 F.3d 1327, 1332 (11th Cir. 2005) ("By incorporating the AAA Rules, including Rule 8, into their agreement, the parties clearly and unmistakably agreed that the arbitrator should decide whether the arbitration clause is valid."); Contec Corp. v. Remote Solution, Co., Ltd. , 398 F.3d 205, 211 (2d Cir. 2005) ("We therefore conclude that as a signatory to a contract containing an arbitration clause and incorporating by reference the AAA Rules, Remote Solution cannot now disown its agreed-to obligation to arbitrate all disputes, including the question of arbitrability."); Apollo Computer, Inc. v. Berg , 886 F.2d 469, 473 (1st Cir. 1989) ("By contracting to have all disputes resolved according to the Rules of the ICC, however, Apollo agreed to be bound by Articles 8.3 and 8.4. These provisions clearly and unmistakably allow the arbitrator to determine her own jurisdiction when, as here, there exists a prima facie agreement to arbitrate whose continued existence and validity is being questioned."). See also United States ex rel. Beauchamp v. Academi Training Center, Inc. , 2013 WL 1332028 (E.D. Va. 2013) ; Terra Holding GmbH v. Unitrans Intern., Inc. , 124 F.Supp.3d 745 (E.D. Va. 2015) (recognizing that, although the Fourth Circuit has not ruled on the issue, a majority of circuit courts have held that the incorporation of specific rules that allow arbitrators to determine arbitrability meets the clear and unmistakable standard); Innospec Ltd. v. Ethyl Corp. , No. 3:14-cv-158, 2014 WL 5460413, *3 (E.D.Va. Oct. 27, 2014) (same).

See, e.g. , Peabody Holding Co., LLC v. United Mine Workers of America, Intern. Union , 665 F.3d 96, 105 (4th Cir. 2012) (holding that an arbitration clause committing to arbitration any dispute "arising under" an agreement was a "a standard broad arbitration clause")

A number of courts have reached the same conclusion with similar agreements. See, e.g. , American Bankers Ins. Group, Inc. v. Long , 453 F.3d 623 (4th Cir. 2006) (holding that a plaintiff's reliance on terms of a promissory note incorporated into a Subscription Agreement "forecloses any argument that the [plaintiff's] claims do not fall within the scope of the arbitration clause [in the Subscription Agreement].")' Iraq Middle Mkt. Dev. Found. v. Al Harmoosh , 769 F.Supp.2d 838, 842 (D. Md. 2011) (holding claims under a promissory note fell within an arbitration clause in a related loan agreement).

Many other courts have noted that even where a claim as pled does not fall within an arbitration clause, courts have broad authority to stay actions where arbitrable claims dominate the suit between the parties. Such a rule is necessary to prevent artful pleading from nullifying otherwise broad arbitration agreements between parties. See, e.g. , Genesco, Inc. v. T. Kakiuchi & Co., Ltd. , 815 F.2d 840, 856 (2d Cir.1987) ("Broad stay orders are particularly appropriate if the arbitrable claims predominate the lawsuit and the nonarbitrable claims are of questionable merit."); Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp. , 460 U.S. 1, 20 n. 23, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983) (decision whether to stay litigation among non-arbitrating parties pending the outcome of arbitration is left to the trial court's discretion).